FILED

JUL 1 3 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSTIE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### MODESTO DIVISION

In re                                    )    Case No. 09-93774-E-12
                                         )    Docket Control No. TOG-14
LUIS T. BENTO and                        )
MARIA C. BENTO,                          )
                                         )
                    Debtor(s).           )
_____  )

**This memorandum decision is not approved for publication and may
not be cited except when relevant under the doctrine of law of the
case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION DENYING
### MOTION FOR ORDER SHORTENING TIME

The court has been presented with an emergency motion for an
order extending the automatic stay filed by the post-confirmation
Debtors under the Chapter 12 Plan in this case.  The Debtors have
defaulted under the terms of the Plan and the court has previously
been presented with an emergency motion by Farmers and Merchants
Bank, as the creditor having a security interest in the Debtors'
dairy herd and equipment, for post-confirmation relief from the
stay to take possession of the herd due to the cattle not being fed
(DCN WFH-1, Dckt. 178), and a subsequent motion by the Debtors for
an emergency order authorizing them to liquidate part of the herd
and the milk dairy quota to generate enough cash collateral to
purchase feed to sustain the herd (DCN TOG-14, Dckt. 244).  The

Motion for Relief From the Automatic Stay was resolved by stipulation between the parties, Dckt. 216, and an order was entered thereon by the court, Dckt. 217. The Stipulation provided for the entry of an order modifying the automatic stay to allow Farmers & Merchants Bank to obtain possession of, sell, and apply the proceeds of such sale to the claim secured by the assets. Notwithstanding the automatic stay being modified, the Debtors and Farmers & Merchants Bank agreed to conditions under which the Bank would forebear from exercising its rights in the collateral.

On June 22, 2011, the court was presented with an emergency motion by the Debtors seeking authorization to liquidate part of the herd and sell the milk quota. The emergency nature of this motion arose because the Debtors did not have sufficient cash flow from the sale of milk to purchase feed for the cows. Emergency Motion to Sell, Dckt. 230. The Debtors needed to liquidate part of the herd to generate such monies. The motion also sought to liquidate enough cows and the milk quota to reduce the Farmers & Merchants Bank claim to approximately $300,000.00. In doing so, it was the Debtors' intention to obtain financing from another source to pay off the Bank. At the hearing the Bank could not agree, nor did it strenuously oppose the requested relief, so long as the proceeds from the sale went to feed the cows and made a significant reduction in the secured claim. The Debtors sought, and obtained from the court, the authority to purchase enough feed for two to three weeds. The court issued its order on June 23, 2011, Dckt. 241.

The Debtors now bring another "Emergency Motion" which requests that the court "extend the stay and make other equitable

2

orders" to protect the estate and the unsecured creditors to allow the Debtors to liquidate the herd. Dckt. 244. The grounds upon which this requested relief is based are stated with particularity to be:

1. Farmers & Merchants Bank made an agreement that it would not seize the cows if the herd was liquidated in stages by the Debtors and the loan was paid down and retired in a reasonable period of time.

2. Debtors relied upon that agreement and liquidated $217,000 worth of the herd. The Debtors have also entered into escrow to sell the milk quota for an additional $135,000.00.

3. The court issued an order of June 22, 2011, allowing the Debtors to sell a part of their herd to buy feed to increase milk production.

4. It was the intent of the court to give the Debtors and the cows one last chance to accomplish their plan.

5. Farmers and Merchants Bank tacitly agreed to the ruling.

6. Because of the sale of the cows and milk quota, the Debtors deserve a chance to orderly liquidate the herd at a price which will benefit the estate and unsecured creditors.

The Emergency Motion and Motion for Order Shortening Time are supported by the declaration of Joe Bento, the Debtors' son and operator of his own dairy. Joe Bento testifies that he sold (not identifying if it was property of the estate or his personal asset) a land plane for $15,000.00 on June 24, 2011. With this money the Debtors purchased 157 tons of dairy hay and the herd now has "plenty of feed." Joe Bento does not state for how long the herd has "plenty of feed." He further testifies that on June 22, 2011,

3

the Debtors sold 31 cows pursuant to the court's order and generated $17,000.00.  Approximately $12,500.00 of that money has been expended buying feed.

Joe Bento states that they will sell more cows to buy more feed.  Milk prices are now extremely high and profitable.  He does not testify as to the actual finances of these Debtors and their operation.  On June 24, 2011, the Debtors sold 300 heifers for $217,000.00 and paid that money to Farmers and Merchants Bank.  The Debtors are in the process of selling the milk quota for $137,000.00.

Joe Bento further testifies that the long term plan for the Debtors' dairy is to liquidate enough cows (part of the Bank's collateral) to reduce the Farmers and Merchants Bank secured claim to $300,000.00.  He projects that the claim will be reduced to $360,000.00 after August 1, 2011.  He believes that the FHA has assured the Debtors that the FHA will issue a long term loan to pay off the Farmers and Merchant Bank secured claim.

This declaration also states that based on the Bank's expert's evaluation, the collateral was worth approximately $900,000.00. After selling the cows pursuant to this court's prior emergency order, Joe Bento believes the remaining herd is worth $566,000.00. There is also the milk quota, to be sold for $135,000.00, and the dairy equipment.  Joe Bento asserts that the cows are well fed and should not be hauled off to slaughter by this creditor.  He believes that if the Debtors are allowed to continue with their new business plan (which is not the confirmed plan in this case), they will generate more money for creditors holding general unsecured claims.

4

1   The authority given by the Debtors for the requested relief is
2   pursuant to 11 U.S.C. § 105(a).    The Debtors direct the court to
3   *Disch v. Rasmussen*, 471 F.3d 769 (7th Cir. 2005) in support of the
4   requested relief.    However, the court in *Disch v. Rasmussen*
5   expressly states that,

> Despite the open-ended language of § 105(a), courts have
> carefully limited the circumstances in which it should be
> used. Otherwise,    there is a real risk that more
> particular restrictions found throughout the Code would
> amount to nothing, because the court could always use the
> residual equitable authority of § 105(a). For that
> reason, **this court has commented that the powers
> conferred by § 105(a) must be exercised "within the
> confines of the Bankruptcy Code."** *In re Lloyd*, 37 F.3d
> 271, 275 (7th Cir. 1994) (citation omitted). We warned
> that **a judge does not have "free-floating discretion to
> redistribute rights in accordance with his personal views
> of justice and fairness,** however enlightened those views
> may be," *Matter of Chicago, Milwaukee, St. Paul, & Pac.
> R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986), or use the
> court's equitable power to circumvent the Code. *In re
> Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) (Section
> 105(a) **"does not create discretion to set aside the
> Code's rules about priority and distribution;** the power
> conferred by § 105(a) is one to implement rather than to
> override."). The question here is whether the court's
> reconsideration and vacation of an order of discharge is
> an appropriate exercise of its equitable power under §
> 105(a).

19  *Id.*, pg. 777.    Emphasis

20   The Debtors have requested an order shortening time to have a
21  motion issued to enjoin Farmers and Merchants Bank from exercising
22  rights it has under a Stipulation the Debtors have entered into.
23  The grounds cited are that the "Debtors relied upon" Farmers and
24  Merchants Bank agreeing not to seize the herd if the herd was
25  liquidated in stages and the loan was paid down in a reasonable
26  period of time.    That the court "intervened" on June 22, 2011, to
27  allow the Debtors an opportunity to sell part of the herd to buy
28  feed.    It was the "clear intent of the court" to allow the Debtors

1  and the cows one last chance to accomplish their plan.  Farmers and
2  Merchants Bank tacitly agreed to the ruling.  Because of a change
3  of circumstances, the Debtors deserve a chance to orderly liquidate
4  the herd at a price to benefit the estate and creditors.

5      The Debtors do not assert that the prior order granting relief
6  from the automatic stay should be vacated pursuant to Fed. R. Civ.
7  P. 60(b) and Fed. R. Bankr. P. 9024.  Rather, they imply the intent
8  of the court and tacit approval of Farmers and Merchants Bank to
9  create a "new plan" for the Debtors to liquidate the herd rather
10 than for the Debtors to perform their confirmed Chapter 12 Plan in
11 this case.  To justify this, the Debtors merely contend that the
12 court should, without consideration of the Bankruptcy Code, allow
13 the Debtors a "chance" to liquidate the herd at some price.

14     Further, the Debtors ignore the Chapter 13 Plan under which
15 they have defaulted and the subsequent Stipulation for relief from
16 the stay which they must be in default if Farmers and Merchants
17 Bank is asserting its right to take possession of the herd.  No
18 contention has been made that Farmers and Merchants Bank is acting
19 in violation of the Stipulation.  To the contrary, the Debtors are
20 contending that notwithstanding the Debtors' default, the court
21 should enjoin Farmers and Merchants Bank from exercising its
22 rights.

23     The Debtors are also very selective in their representation of
24 the "intention of the court" in having granted the emergency motion
25 to liquidate part of the herd to have money to feed the herd.  As
26 Joe Bento and the Debtor's counsel, both of whom were at the
27 hearing should recall, the court authorized the sale because the
28 Debtors represented that they did not have food and the cows would

1 starve and Farmers and Merchants Bank was paralyzed and unable to
2 act.   The court was not about to let the cows suffer due to the
3 defaults of the Debtors and the inability to act (either take
4 possession of the herd or agree to a partial liquidation to
5 generate money for feed and protect the value of the balance of the
6 collateral).   The court expressed grave concern about the Debtors
7 continuing attempts at using the court to effectuate a piecemeal
8 liquidation of the collateral based upon "emergencies."   The
9 court's closing comments were that if the Debtors and Farmers and
10 Merchants Bank were unable to come to an agreed method to provide
11 for the herd, and Farmers and Merchants Bank remained paralyzed
12 such that the cows were put at risk, then it may fall to the County
13 to seize and care for the herd.

14      By one fell swoop of the court's pen, the Debtors seek to have
15 the court rewrite the Chapter 12 Plan and ignore the additional
16 promises and agreements they made in the Stipulation that resolved
17 the first "emergency" motion brought by Farmers and Merchants Bank
18 contending that the cows were not being property cared for by the
19 Debtors.   The court is unwilling to become a party to the forced,
20 partial liquidation of this creditor's collateral done outside the
21 terms of the confirmed Chapter 12 Plan.

22      11 U.S.C. § 105 allows the court to enter such orders as are
23 necessary and appropriate to carry out the provisions of Title 11.
24 In reality, the Debtors are asking the court to use § 105 to
25 override all other provisions of Title 11 and create a free-
26 floating, unspecified liquidation plan of unknown time and
27 duration.    Further, under this free floating, unspecified
28 liquidation plan, it appears that the Debtors are resorting to

7

1  borrowing money from Joe Bento, as he liquidates his assets (the
2  land plane) to purchase feed when the Debtors are unable to so do.
3      Further, the Federal Rules of Bankruptcy Procedure clearly
4  provide that injunctive relief must be sought through an adversary
5  proceeding. Fed. R. Bankr. P. 7001. If the Debtors wish to obtain
6  a temporary restraining order or preliminary injunction, then they
7  must comply with Fed. R. Civ. P. 65 and Fed. R. Bank. P. 7065,
8  including the posting of such bond as order by the court.    The
9  present motion seeks to short circuit this process and protections
10 of an adversary proceeding, and instead have the court enjoin
11 Farmers and Merchants Bank because the Debtors now want to try and
12 liquidate the herd.
13     No proper basis has been show for this court to shorten time
14 for a third emergency motion to provide for these cows.    The
15 limited evidence provided to the court is limited to the Debtors'
16 son and dairy owner stating that they would rather liquidate the
17 herd rather than Farmers and Merchants Bank exercising its rights
18 under the Stipulation and contract between the Debtors and the
19 Bank.   Fed. R. Bankr. P. 9006 (c) provides that a court may reduce
20 time,   such as notice for a motion for cause shown.    This
21 determination is left to the discretion of the court.  On review,
22 an appellate court considers whether the trial court (1) identified
23 the correct legal rule to apply and (2) if the court's findings
24 were (a) illogical, (b) implausible, or (3) without support in
25 inferences that may be drawn from facts in the record.  *Foster v.*
26 *Double R. Ranch Ass'n (In re Foster)*, 435 B.R. 650, 655 (9th Cir.
27 BAP 2010).  An order on a motion to shorten time is reviewed under
28 an abuse of discretion standard.  *Id.*  This "emergency" has been an

8

1  event in the making since the Debtors defaulted under their Chapter

2  12 Plan.    In reality, the Debtors are seeking either a *de facto*

3  amendment to the Plan or an injunction enforcing a post-

4  confirmation contract between the parties.    It is improper to

5  shoehorn in either remedy into a free-floating § 105(a) "stay

6  injunction."  The Debtors had the opportunity to seek to amend the

7  plan to provide for a liquidation or could have converted to a case

8  under Chapter 7.    They have chosen not to do so in this case.

9  Cause has not been shown for shortening time for the motion

10  presented to the court.

11      This Memorandum Opinion and Decision constitutes the court's

12  findings of fact and conclusions of law in support of this ruling.

13  The court shall issue a separate order denying the Motion for Order

14  Shortening Time.

15  Dated:    July 13, 2011

16

17                RONALD H. SARGIS, Judge

                  United States Bankruptcy Court

18

19

20

21

22

23

24

25

26

27

28

This document does not constitute a certificate of service.  The parties listed below will be served
a separate copy of the attached document(s).

Megan Lewis
400 Capitol Mall 22nd Fl
Sacramento, CA 95814

Thomas O. Gillis
1006 H St #1
Modesto, CA 95354

Luis Bento
7500 Maze Blvd
Modesto, CA 95358

Maria Bento
7500 Maze Blvd
Modesto, CA 95358

M. Nelson Enmark
3855 N West Ave Ste 108
Fresno, CA 93705

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street , Room 7-500
Sacramento, CA 95814